**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                            )
UNITED STATES OF AMERICA    )
                                            )
                                            )
v.                                          )    Criminal No. 10-10220-JLT
                                            )
                                            )
JOSEPH MATZ,                       )
                                            )
            Defendant.              )
_____)

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant hereby respectfully submits this brief memorandum in anticipation of tomorrow's sentencing hearing in the above-captioned case.

Despite the recidivistic nature of his offense, Defendant requests the Court impose a sentence no greater than half the sentence the career offender guideline recommends (in the 5 to 6 year range). In committing the instant offenses, the defendant violated a term of both his Connecticut probation (which carries the imposition of a five year suspended sentence as a potential sanction) as well as the terms of his federal supervised release; this fact will likely extend whatever period of incarceration this Court imposes. Mr. Matz, despite his history of robbery convictions, is not a violent person by nature; he is reflective, and has good insight into the nature of his problem. This augurs well for his chances of preventing another relapse when he is released again, which will in any event be close to his fiftieth birthday. He has also now had the benefit of a thorough psychiatric record review and exam, by Harvard and McLean

affiliated psychiatrist David Rosmarin.[1]  Dr. Rosmarin's fine-toothed review of the medical record disclosed the important fact that Mr. Matz has been inadequately served psychiatrically: while he had enjoyed a period of relative stability when treated with the mood stabilizer lithium as a young adult, this medication was discontinued and never restarted.  The antidepressants he has subsequently been prescribed for years, both in prison and in the community, may have made his condition worse.  At Dr. Rosmarin's instance, Mr. Matz was restarted on lithium at Plymouth County House of Correction, and has again enjoyed over a year of stability, during which, in addition to the usual stresses brought on by prison life, he weathered the early death of his girlfriend Dawn Battle, an event which caused him intense grief.  See Rosmarin Assessment at 5, 6; Rosmarin Addendum; see also Rosmarin Treatment Letter.

As recounted in the PSR and the Psychiatric Evaluation performed by Dr. Rosmarin, Joseph Matz's story has a tragic quality to it.  It is not often that stories seem foretold the way his does.  A profoundly sensitive African-American boy adopted into an educated white family, he felt rejected by his adoptive mother, who appears to have been frustrated and cold.  "He was a boy who was rejected by his mother, felt racially out of place in family and school, stuttered badly, and probably had a learning disorder."  Rosmarin Assessment at 3.  After his parents' divorce when he was a young child, Mr. Matz had a difficult adolescence.  PSR ¶¶ 73-78; Rosmarin Assessment at 2-4.  In Dr. Rosmarin's account, a window of opportunity where

---

[1] See "Psychiatric Assessment" by David Rosmarin, M.D. dated August 19, 2010 ("Rosmarin Assessment") with two page June 3, 2011 addendum ("Rosmarin Addendum"); see also "Letter" dated June 2, 2010 from Dr. David Rosmarin to Plymouth County House of Correction Medical Staff with Treatment Recommendation ("Rosmarin Treatment Letter").  The Assessment also notes that Mr. Matz's ADHD diagnosis as a youngster was likely an incorrect diagnosis of childhood bipolar disorder, and that the Ritalin he received at the time likely worsened his condition as well.   Assessment at 3.   These documents have been filed with the Court under seal, and served on the government and Probation.  The probation department has informed the undersigned it is forwarding the materials to the Bureau of Prisons at the Defendant's request.

treatment seemed to be working for him in his later teens was abruptly shut when Mr. Matz moved out of his mother's house, and discovered cocaine.  Rosmarin Assessment at 4.  Mr. Matz's cocaine addiction fueled his criminal behavior, and constantly derailed his attempts to get on the right track.  As he became an adult, Mr. Matz would become intensely enmeshed in relationships with women, from whom he sought the acceptance and surcease from emotional pain he had sought from his mother.  His relationship with Dawn Battle was the last and by far the most powerful of these relationships.

On his release from his most recent term of incarceration, he started out doing very well.  He fully engaged in mental health treatment with his psychologist.  PSR ¶ 109.  He worked steadily at an entry-level food service job at Au Bon Pain; he later got a second job at a call center.  PSR ¶¶ 116-117.  It was at the call center he met Dawn Battle; his relationship with her became the consuming obsession which led to his undoing.  His obsession with her is reflected in his psychotherapist's and psychiatrist's contemporaneous progress notes, as he grappled with what it meant. Rosmarin Assessment at 9-10.  He recounted the events leading up to his decision to rob the banks and relapse into cocaine use in granular detail to Dr. Rosmarin and Probation Officer Tricia Marcy as well.  Id. at 7-9 ("Functioning Leading to the Instant Charges"); PSR ¶ 87.   The power of his feelings for Dawn were a revelation to him, and for which, despite treatment and other supports from Probation, he was in the end unprepared: Mr. Matz equated his chasing after her with active drug addiction, as did his therapist at the time, John Cusak.  Id.  The decision to rob banks, as he had done before, was the result of logic borne out of his crazed desperation to be with Dawn and provide for her.

Mr. Matz maintains a close relationship with his father, David Matz, a professor in the Department of Conflict Resolution, Human Security and Global Governance at the John W.

McCormack Graduate School of Policy Studies at UMass Boston.  With this memorandum is submitted a brief letter, dated in June, from Professor Matz.  He succinctly writes: "Joe's issues have to do with an inability to control himself, and his age and better ideas of treatment suggest that he can plan better for self-control when next he is on the street."  Exh. A.

      Dr. Rosmarin similarly opined:

> [T]he combination of being inadequately treated for his cycling moods and cocaine addiction intensified his dependence on and perceived need to support Dawn financially and involve her in mutual cocaine use. The culmination of these factors contributed greatly to his decision to once again rob banks. … Despite the fact that Mr. Matz has had a rocky road with several relapses and failed paroles, it appears that he firmly understands the connections among his cocaine addiction, Dawn, and another incarceration. … In my opinion, he has come around and understands the personal cost and danger of cocaine use--as demonstrated by his achieving ten months of full abstinence before this most recent relapse. It is my further opinion that this long delayed insight can contribute to his maintenance of abstinence.
>
> In my opinion, Mr. Matz's risk of recidivism can be acceptably low with a sufficient and intensive program of: 1. Individual psychotherapy, 2. Adequate antidepressant and antimania treatment, 3. A wrap-around program of services including residence in a halfway house, and 4. Close observation by parole officers.

Rosmarin Assessment at 12.

      For the foregoing reasons, Defendant submits a sentence in the 5 to 6 year range will fulfill the purposes of punishment, while being not longer than necessary to achieve them.  It bears mention that such a sentence would be incrementally longer than the nominal length of Mr. Matz's prior federal sentence, and that Mr. Matz will be released an older man, with evidenced self-insight after a disastrous relapse, both into cocaine use and criminal behavior.

        Respectfully submitted,
        JOSEPH MATZ,

        By his attorney,

        /s/ Ian Gold
        Ian Gold (BBO# 665948)
        Federal Defender's Office
        51 Sleeper Street, 5th FL
        Boston, Massachusetts 02210
        (617) 223-8061 (phone)
        (617) 223-8080 (fax)

Date: August 29, 2011

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this date.

        /s/Ian Gold
        Ian Gold