<pre>
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2
      * * * * * * * * * * * * * *
 3    UNITED STATES OF AMERICA      *
                                    *
 4              vs.                 *        CRIMINAL ACTION
                                    *        No. 10-10220-JLT
 5    JOSEPH MATZ                   *
                                    *
 6    * * * * * * * * * * * * * *

 7              BEFORE THE HONORABLE JOSEPH L. TAURO
                    UNITED STATES DISTRICT JUDGE
 8                           SENTENCING

 9    A P P E A R A N C E S

10              UNITED STATES ATTORNEY'S OFFICE
                1 Courthouse Way, Suite 9200
11              Boston, Massachusetts 02210
                for the United States
12              By:  Thomas E. Kanwit, AUSA

13
                FEDERAL DEFENDER OFFICE
14              District of Massachusetts
                51 Sleeper Street, 5th Floor
15              Boston, Massachusetts 02210
                for the defendant
16              By:  Ian Gold, Esq.

17

18

19                                   Courtroom No. 22
                                     John J. Moakley Courthouse
20                                   1 Courthouse Way
                                     Boston, Massachusetts 02210
21                                   August 30, 2011
                                     11:15 a.m.
22

23                    CAROL LYNN SCOTT, CSR, RMR
                          Official Court Reporter
24                  One Courthouse Way, Suite 7204
                      Boston, Massachusetts 02210
25                          (617) 330-1377
</pre>

1                    <u>P R O C E E D I N G S</u>

2              **THE CLERK:**  All rise for the Honorable Court.

3              **THE COURT:**  Good morning, everybody.

4              **VOICES:**  Good morning, Your Honor.

5              **THE CLERK:**  This is criminal matter No. 10-10220,

6      United States of America versus Joseph Matz.

7              Counsel please identify themselves for the record.

8          **MR. KANWIT:**  Good morning, Your Honor.  Thomas

9      Kanwit for the United States.

10         **MR. GOLD:**  Good morning, Your Honor.  Ian Gold on

11     behalf of Joseph Matz.

12         **THE COURT:**  Okay.  The defendant is here.  And this

13     is a hearing on sentencing.

14             And the government has a recommendation?

15         **MR. KANWIT:**  We do, Your Honor.  The government's

16     recommendation is 151 months, which is the low end of the

17     *Guidelines* that Mr. Matz faces as a career offender.  Given

18     Mr. Matz's criminal history, his very high level of

19     recidivism, the government's recommendation is actually,

20     from my standpoint, low.  It takes into account some of the

21     factors that defense counsel has argued for.

22             But at bottom it's founded upon several factors.

23         **THE COURT:**  What is the guideline range again?

24         **MR. KANWIT:**  151 to 188 months.  He's a career

25     offender.  He has a prior conviction in this courthouse for

1    bank robbery by force.  He would have been a career offender

2    at that point and was initially sentenced as a career

3    offender but --

4             **THE COURT:**  Any mandatory?

5             **MR. KANWIT:**  No, not as a career offender, there is

6    no mandatory minimum.

7             **THE COURT:**  All right.

8             **MR. KANWIT:**  Because one of his career offender

9    predicates turned out to be too old to be considered a

10   predicate for career offender status, he was resentenced to

11   47 months.

12            Virtually as soon as he got out he relapsed and did

13   the same type of behavior that he's been engaged in most of

14   his adult life.

15            We have a detailed psychological explanation for

16   why that is happening but what I consider to be an extremely

17   facile conclusion at the end, which is that with

18   psychotherapy and supervision, and now that he's on lithium,

19   we can be reasonably sure he won't relapse.

20            The only thing that's different at this point other

21   than Mr. Matz's advancing age is that he is on lithium.  He

22   was tried on lithium some years ago and that seemed to help

23   him but then somehow he was not kept on lithium.

24            I think that's a fairly slender read for the Court

25   to hang its hat on that the Court can protect society

1       sufficiently with the kind of sentence the defendant is

2       advocating, five to six years.  This is a man who keeps

3       engaging in the same kind of behavior:  Robbing banks

4       because he has either an obsession or addiction to cocaine

5       or an obsession with women.

6              Now, I don't belittle for a moment the

7       psychological history and what Mr. Matz has gone through.

8       It would be challenging for anyone.  But the fact is that

9       that is who he is.  That can't be changed by lithium itself

10      or anything else.

11             And what we see with Mr. Matz is that he does not

12      have sufficient impulse control to stop himself from going

13      into a bank and demanding money.  He has done it time and

14      time again.  He robbed five banks within one month or six

15      weeks in connection with this robbery.  This is one of the

16      five robberies.  We chose to only charge him with one

17      because we frankly didn't see any point to piling on because

18      we could get a sufficient sentence with one robbery.

19             But the Court has to be aware that he confessed to

20      all five robberies, not just the one for which the Court is

21      facing sentencing him today on.

22             In addition, he's had other crimes previous in his

23      past where he has done essentially the same sort of thing.

24      So the government is very concerned that this defendant has

25      to be kept away from society because he cannot control

1   himself.

2          **MR. GOLD:**  Your Honor, what we have is a spree of

3   robberies to which Mr. Matz admitted.  And it's coming a

4   year after he was released from prison for another set of

5   bank robberies, also the same type of situation, about three

6   in a row.  He did some state time on those and some federal

7   time, the sentence was 47 months.

8          But in contrast to what Mr. Kanwit says, one of the

9   things I think it's important to do, we do in our

10  memorandum, is kind of stretch out the period of time from

11  when he was released to now.

12         He actually started out doing very well.  He worked

13  at Au Bon Pain, Souper Salad, was in a halfway house, was

14  engaged with the treatment that he had, which makes the kind

15  of outcome here all the more sad in a way.

16         But he was, through his own admission -- we spoke

17  with Ms. Marcy from Probation, to Dr. Rosmarin who came in,

18  the psychiatrist that we hired came in twice, interviewed

19  him in 2010 and 2011 -- but really taken by surprise by the

20  strength of his feelings for this woman Dawn Battle.  He

21  became obsessed with her, thinking about her --

22         **THE COURT:**  She passed away?

23         **MR. GOLD:**  She is the woman who passed away.

24         But what is striking to me, and Dr. Rosmarin bit

25  into the records really deeply, but he was struggling and

1    being open about this at the time with his therapists.  He

2    had a psychiatrist and a psychologist at the time trying to

3    figure out how to manage this and he failed.  He failed.  He

4    got kind of wrapped up in how he was going to support her in

5    this kind of fantasy life and then robbed a bank because

6    that's what he had known to do before to get the type of

7    cash that he thought he needed.  He then slipped and started

8    using cocaine and it was off to the races.

9         Now he presents as someone who is sort of harrowed

10   by what he did.  He's got a close relationship with his

11   father David Matz who teaches at U. Mass. Boston who has

12   written a letter that we submitted to the Court.  And it

13   talks about what happened with insight and kind of reasoning

14   through what happened.  And I think both Dr. Rosmarin and

15   Professor Matz talk about this as insight that will create a

16   buffer for relapse in the future.

17        He has got the insight.  He has got the age.  He's

18   going to be released -- he's in his early forties now.  And

19   he also has the medication change, which is not unimportant.

20   I appreciate what the government is saying in one respect.

21   I mean, it's not the whole kit and caboodle here but it is a

22   very important thing.

23        And the storms that Mr. Matz has weathered over the

24   past year are pretty severe.  And he's kind of come through

25   them all right and which we attribute in part to the

1    medication change that has him a little bit better put

2    together.  So that's the picture.

3           I mean, in terms of the sentencing, the length of

4    the sentence, Mr. Matz also has a supervised release

5    violation based on this one episode that he admits he

6    engaged in and also owes time of an uncertain length, he's

7    got a five-year suspended sentence that he owes to

8    Connecticut from the prior spree.  And it's uncertain what's

9    going to happen there so he's got a lot of baggage or

10   wreckage to clean up based on this.  And that goes into our

11   recommendation for about what's essentially half of what the

12   *Guidelines* put out, which is I think producing diminishing

13   returns at that point by just keeping him in longer.

14           (Pause in proceedings.)

15        **MR. GOLD:**  I know Mr. Matz --

16        **THE COURT:**  I am going to ask him.  I was just

17   thinking of -- can I see you?

18           (Whereupon, the Court and the Probation Officer

19           conferred.)

20        **THE COURT:**  Mr. Matz, you are about to be

21   sentenced.  And as one who faces sentencing you have the

22   right to address the Court, tell me anything that may be on

23   your mind if you would care to do so.

24           If you would prefer to remain silent, you may

25   remain silent without fear of being prejudiced.  It is up to

1   you.  If you want to speak, go ahead.  If you don't, that is

2   okay.

3        **THE DEFENDANT:**  I just wanted to say that, I mean,

4   I know it's bad, you know, but this is a different situation

5   than all of the other times because I was doing good.  And I

6   got in a situation with a woman that I had never really

7   experienced in the past and it just kind of swallowed me up,

8   you know, and it became more than I could deal with.

9        You know, Mr. Kanwit said that this is who I am,

10  you know, but it isn't.  I guess, I mean, I don't really

11  know who I am but, I mean, I do know that the things that I

12  was doing out there in the beginning, you know, were not

13  good.

14       And, you know, I am more than what the record says.

15  I mean, he made it seem like I was just a throw-away human

16  being and I'm not.  You know, I tried, I did the best that I

17  could.  I spoke to everybody that was in my life.  And, you

18  know, it just, it didn't get any better, you know, the

19  obsession, that constant thinking about her, about what I

20  could do to make it better.  And it just took over every

21  other part of my life.  I lost my jobs and every other area

22  of my life was just destroyed.

23       And eventually I started to use but it stems from

24  me wanting to just take the easy way out.  I tried and I did

25  good, I worked hard.  And, you know, I'm going to do okay.

1     I mean, it just got out of control and I didn't know what to

2     do.  And I did, I fell back on what I had known in the past.

3     But, you know, with all due respect to what he said, it's

4     not who I am, you know.

5          And it seemed like now it was all for nothing

6     because now she's gone and I lost everything.

7          So, that's it.

8          **THE COURT:**  All right.  I am going to sentence you

9     to 84 months.  And I want you to understand that I think the

10    government's recommendation was a reasonable one.  It is a

11    very, very difficult position for the government to be in

12    and I understand and I think you made a reasonable

13    suggestion.  I just think that you don't need that much

14    punishment at this stage of this man's career.  And if we

15    give him a little slack, perhaps he will use that

16    opportunity to his advantage and society's advantage when he

17    gets out.  If he doesn't, then he is going to come back

18    again.  And if they bring him to me, I will remember this

19    occasion very clearly.

20         Do you understand that?

21         **THE DEFENDANT:**  Yes.

22         **THE COURT:**  Okay.  So, now, anything else?

23         **THE PROBATION OFFICER:**  There are a number of other

24    items.

25         The Probation Office would suggest a couple of

1    judicial recommendations that may assist Mr. Matz when he is

2    in prison, including a judicial recommendation that the

3    defendant participate in all available substance abuse

4    treatment including, but not limited to, the Bureau of

5    Prison's 500-Hour Residential Drug Abuse Program.

6         **THE COURT:**  Any objection to that?

7         **MR. GOLD:**  No, Your Honor, no objection to that.

8         **THE COURT:**  Go ahead.

9         **THE PROBATION OFFICER:**  And the second one would be

10   a judicial recommendation that he be designated to an

11   institution commensurate with security where the Bureau of

12   Prisons can afford appropriate psychiatric/psychological

13   care for the defendant's documented mental health needs.

14        **MR. GOLD:**  We were going to propose the same

15   condition.

16        **THE COURT:**  All right, so no objection.  Go ahead.

17        **THE PROBATION OFFICER:**  There would also be a

18   period of supervised release for Mr. Matz, which would be,

19   the guideline range is two to three years.

20        **THE COURT:**  Any objection --

21        **MR. GOLD:**  No.

22        **THE COURT:**  Three years.

23        **THE PROBATION OFFICER:**  We'd recommend three years.

24        **THE COURT:**  Three years.

25        **THE PROBATION OFFICER:**  That there is also

1    restitution in this case.  There was $7,112 taken from

2    Sovereign Bank but my understanding is that $4,073 was

3    recovered by law enforcement to be turned over to Sovereign

4    Bank so that would make a balance of Mr. Matz owing $3,039

5    for restitution.

6              **THE COURT:**  Any objection to that?

7              **MR. GOLD:**  No.

8              **THE COURT:**  Okay.

9              **THE PROBATION OFFICER:**  And that restitution

10   payments would begin immediately according to the Bureau of

11   Prisons Financial Responsibility Program while he is

12   incarcerated and according to a court-ordered repayment

13   schedule when he is out on supervised release.

14             **THE COURT:**  Any objection to that?

15             **MR. GOLD:**  No.

16             **THE COURT:**  Okay.  Go ahead.

17             **THE PROBATION OFFICER:**  And restitution payments

18   would be made to the Clerk's Office at this court for

19   transfer to Sovereign Bank.

20             **THE COURT:**  Any objection to that?

21             **MR. GOLD:**  No.

22             **THE COURT:**  Okay.

23             **THE PROBATION OFFICER:**  Mr. Matz would have to

24   notify the U.S. Attorney's Office within 30 days of any

25   change of mailing or residence address that occurs while any

```
 1   portion of the restitution remains unpaid.

 2            THE COURT:  Any objection?

 3            MR. GOLD:  No.

 4            THE PROBATION OFFICER:  We would not recommend any

 5   fine because of the need to pay restitution and Mr. Matz's

 6   inability to pay a fine.

 7            THE COURT:  Any objection?

 8            MR. KANWIT:  No, Your Honor.

 9            THE COURT:  Okay.

10            THE PROBATION OFFICER:  Then there would be some

11   conditions of supervised release.  There would be several

12   mandatory conditions.

13            The first one that the defendant shall not commit

14   another federal, state or local crime and shall not

15   illegally possess a controlled substance.

16            THE COURT:  Any objection?

17            MR. GOLD:  No, Your Honor.

18            THE PROBATION OFFICER:  The second one would be

19   that the defendant shall refrain from any unlawful use of a

20   controlled substance and submit to one drug test within

21   fifteen days of release from imprisonment and at least two

22   periodic drug tests thereafter not to exceed 104 tests per

23   year as directed by the Probation Office.

24            THE COURT:  Any objection?

25            MR. GOLD:  No, Your Honor.
```

1    **THE PROBATION OFFICER:**  The defendant shall -- the

2    third one -- the defendant shall submit to the collection of

3    a DNA sample as directed by the Probation Office.

4    **THE COURT:**  Any objection?

5    **MR. GOLD:**  No.

6    **THE PROBATION OFFICER:**  And the fourth mandatory

7    condition, that the defendant shall comply with the standard

8    conditions that have been adopted by the court and set out

9    at the *Guidelines* at Section 5D1.3(c).

10   **THE COURT:**  Any objection to that?

11   **MR. GOLD:**  No, Your Honor.

12   **THE PROBATION OFFICER:**  And then to assist Mr. Matz

13   when he is out on supervised release we would recommend a

14   number of special conditions of supervision.

15   The first one being that the defendant is

16   prohibited from possessing a firearm, destructive device or

17   other dangerous weapon.

18   **THE COURT:**  Any objection?

19   **MR. GOLD:**  No, Your Honor.

20   **THE PROBATION OFFICER:**  We would recommend three

21   financial conditions to assist our office in the collection

22   of the restitution payments.

23   The first one that the defendant is to pay the

24   balance of any restitution imposed according to a

25   court-ordered repayment schedule.

1          **THE COURT:**  Any objection?

2          **MR. GOLD:**  No, Your Honor.

3          **THE PROBATION OFFICER:**  The defendant is prohibited

4     from incurring new credit charges or opening additional

5     lines of credit without the approval of the Probation Office

6     while any financial obligations remain outstanding.

7          **THE COURT:**  Any objection?

8          **MR. GOLD:**  No, Your Honor.

9          **THE PROBATION OFFICER:**  The defendant is to provide

10    the Probation Office access to any requested financial

11    information which may be shared with the Financial

12    Litigation Unit of the U.S. Attorney's Office.

13         **THE COURT:**  Any objection there?

14         **MR. GOLD:**  No.

15         **THE PROBATION OFFICER:**  And then as far as

16    treatment, we recommend substance abuse treatment.  The

17    defendant is to participate in a program for substance abuse

18    counseling as directed by the Probation Office, which may

19    including testing not to exceed 104 tests per year.  The

20    defendant may be required to contribute to the cost of such

21    services based on the ability to pay or availability of

22    third-party payment.

23         **THE COURT:**  Any objection there?

24         **MR. GOLD:**  No, Your Honor.

25         **THE PROBATION OFFICER:**  And also mental health

1    treatment.  The defendant is to participate in a mental

2    health treatment program as directed by the Probation

3    Office.  He may be required to contribute to the cost of

4    services for such treatment based on the ability to pay or

5    availability of third-party payment.

6         **THE COURT:**  Any objection?

7         **MR. GOLD:**  No, Your Honor.

8         **THE PROBATION OFFICER:**  And the last one is that

9    the defendant shall at all times use his true name and is

10   prohibited from using any false identifying information,

11   including but not limited to any aliases, false dates of

12   birth, false Social Security numbers and incorrect places of

13   birth.

14        **THE COURT:**  Any objection?

15        **MR. GOLD:**  No, Your Honor.

16        **THE COURT:**  Okay.

17        **THE PROBATION OFFICER:**  And then there is also a

18   special assessment of $100.

19        **MR. GOLD:**  No objection to that, Your Honor.

20        **THE COURT:**  All right.  Is that it?

21        **THE PROBATION OFFICER:**  That's it from the

22   standpoint of Probation.  I don't know if there is anything

23   else --

24        **THE COURT:**  Anything else you want to add?

25        **MR. GOLD:**  We would request that the Court

1    recommend the Bureau of Prisons designate Mr. Matz as close

2    to this area as possible.  I think that's a standard --

3          **THE COURT:**  We will make that recommendation.  Of

4    course, you know that I have no authority to do anything but

5    make the recommendation.

6          **MR. GOLD:**  Yes, Your Honor.

7          **THE COURT:**  Okay.  Anything else?  Anything else

8    from the government?

9          **MR. KANWIT:**  No, Your Honor.

10         **THE COURT:**  All right.  Now, Mr. Matz, you have

11    been sentenced.  And as one who has been sentenced, you have

12    the right to appeal that sentence if you would care to do

13    so.

14         If you don't have funds to prosecute an appeal, you

15    will be permitted to appeal without payment of any fees.  If

16    you don't have funds for a lawyer, one will be provided for

17    you.

18         You have 14 days to file a notice of appeal if it

19    is your intention to do so.

20         Do you understand that?

21         **THE DEFENDANT:**  Yes.

22         **THE COURT:**  Anything else?

23         **MR. KANWIT:**  Just for the record, Your Honor, while

24    I understand the Court's reasoning, it's important that the

25    record reflect the government's objection to the sentence.

```
 1              THE COURT:  Okay.

 2              MR. KANWIT:  Thank you.

 3              THE COURT:  Is that it?  All right.  Thank you,

 4    everybody.

 5              MR. KANWIT:  Thank you, Your Honor.

 6              MR. GOLD:  Thank you, Your Honor.

 7              THE DEFENDANT:  Thank you, Judge.

 8

 9              (WHEREUPON, the proceedings were recessed at 11:35

10              a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# C E R T I F I C A T E

      I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.


      /S/CAROL LYNN SCOTT


_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377


**DATE: February 10, 2012**